FILED
2012 Feb-06  AM 09:56
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN  DIVISION

| | | |
|---|---|---|
| **JUPITER COMMUNITIES, LLC,** | ) | |
|       Plaintiff, | ) | |
| | ) | |
|      **vs.** | ) | |
| | ) | |
| **TARRAGON CORPORATION, et al.,** | ) | |
|       Defendants. | ) | |
| _____ | ) | Civil Action Number |
| | ) | **5:11-cv-2177-AKK** |
| **TARRAGON CORPORATION, et al.,** | ) | |
|      Counter Claimants / Third Party Plaintiffs | ) | |
| | ) | |
|      **vs.** | ) | |
| | ) | |
| **JUPITER COMMUNITIES, LLC, et al.,** | ) | |
|      Counter Defendant / Third Party Defendants | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Counter Defendant Jupiter Communities, LLC ("Jupiter") and Third Party Defendants Taberna Capital Management ("Taberna") and RAIT Financial Trust's ("RAIT") (collectively "Jupiter Defendants") motion to dismiss Tarragon Corporation ("Tarragon") and Tarragon Huntsville Apartments, LLC's ("Tarragon Huntsville") (collectively "Tarragon Plaintiffs")

Counterclaim and Third Party Complaint.  Doc. 11.  For the reasons stated herein, the court **GRANTS** the motion as it relates to the Tarragon Plaintiffs' claims against Taberna, but **DENIES** the motion in all other respects.  The Tarragon Plaintiffs' third party complaint against Taberna is **DISMISSED without prejudice**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This action arises from a contract between Jupiter and Tarragon whereby Jupiter agreed to serve as the sub-property manager of an apartment complex in Huntsville, Alabama managed by Tarragon and owned by Tarragon Huntsville ("Madison Agreement").  Doc. 1-1 ¶ 12.  After Tarragon terminated the Madison Agreement, Jupiter filed suit against Tarragon, U.S. Residential Group, Inc., William S. Friedman, Robert P. Rothenberg, and Tarragon Huntsville (collectively "Tarragon Defendants") in the Circuit Court of Madison County, Alabama, alleging claims for breach of contract, tortious interference with business relations, conversion, fraudulent inducement, conspiracy, defamation, misrepresentation, and piercing the corporate veil.  *See generally id.*  The Tarragon Defendants removed the lawsuit to this court.  Doc. 1.  Subsequently, Tarragon and Tarragon Huntsville filed a one count counterclaim against Jupiter and a third party complaint against Taberna and RAIT, doc. 4, at 12-20, alleging fraud, fraud in the inducement, misrepresentation, and negligent misrepresentation against the Jupiter Defendants, *id.* at 18.

Taken as true, Taberna is a Delaware Limited Liability Company with Taberna Realty Finance Trust ("TRFT") as its sole member.  RAIT is a Maryland real estate investment trust that owns one hundred percent of the common shares and eighty-three percent of the preferred shares of TRFT.  Jupiter is a controlled subsidiary of RAIT.  *Id.* at 12.  The Tarragon Plaintiffs assert that "Taberna acted as a collateral manager for the benefit of several entities holding unsecured claims against Tarragon."  *Id.* at 13.  Due to Taberna's economic position, Tarragon and Taberna purportedly entered into an agreement whereby "any financial restructuring of Tarragon and its debt must be acceptable to Taberna in its sole and absolute discretion."  *Id.*  Consequently, when Tarragon filed for bankruptcy in January 2009, Taberna "had the power to veto a significant reorganization plan in the bankruptcy proceeding" including plans pertaining to the management and disposition of Tarragon properties in Tennessee, Texas, and Alabama.  *Id.*

Additionally, at some point in 2009, RAIT purchased Jupiter.  *Id.* at 14.  In March and early April of 2010, RAIT began negotiating for Tarragon to contract with Jupiter, RAIT's "controlled subsidiary," to provide property management services for Tarragon's commercial real estate.  *Id.*  Allegedly, "RAIT insisted that it would cause Taberna to disapprove of any plan of organization by Tarragon that did not include management fees for Jupiter."  *Id.*  As such, the Tarragon Plaintiffs assert that in "furtherance of its own best interests in maximizing profit to its controlled subsidiary, Jupiter, and to the significant detriment of Tarragon, RAIT forced Tarragon to contract with Jupiter to manage the bundle of properties in

Huntsville, Tennessee and Texas." *Id.* at 14-15.

During the course of these negotiations, the Tarragon Plaintiffs maintain that RAIT misrepresented that "Jupiter managed properties in Tennessee and Dallas," and that RAIT concealed that "Taberna intended to sell the securitizations it managed, including the securitizations that were creditors of Tarragon." *Id.* at 15. RAIT and Jupiter also purportedly misrepresented "that they intended on hiring as COO a reputable individual in the property management business to oversee the management of properties." *Id.* at 16. Finally, RAIT and Jupiter allegedly misrepresented "that Jupiter would be moving its office to Dallas, Texas." *Id.* According to the Tarragon Plaintiffs, absent these misrepresentations, they "would not . . . [have] conducted any business with Jupiter," including contracting with Jupiter to manage the Huntsville properties *Id.*

Moreover, the Tarragon Plaintiffs contend that RAIT falsely made representations that "it would stand behind the performance of the contracts by Jupiter because RAIT and Taberna had an identity of interest with Tarragon and its creditors' role as a major creditor in the bankruptcy proceeding." *Id.* Yet, allegedly, RAIT "directed that Jupiter make the least possible expenditures in managing the properties" and attempted "to operate the properties by long distance." *Id.* at 17. Stated simply, the Tarragon Plaintiffs claim that, from the beginning, Jupiter never intended to "perform its contracts," "spend the time or money to have a presence at the properties," or "manag[e] [the properties] in a professional 'hands-on' manner consistent with industry standards, good business

practices and representations made to Tarragon." *Id.* at 18.

The Jupiter Defendants moved to dismiss the Tarragon Plaintiffs' counter and third party complaint arguing that it (1) fails to state a claim under Fed. R. Civ. P. 12(b)(6), (2) fails to meet the particularized pleading standard of Fed R. Civ. P. 9(b), and (3) that this court lacks personal jurisdiction over Taberna and RAIT.  Doc. 11.  This motion is fully briefed, docs. 14, 17, and ripe for adjudication.

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at

1949 (citations and internal quotation marks omitted).  Thus, when considering a

motion to dismiss, the court accepts all factual allegations as true.  *See, e.g.,*

*Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).  However,

legal conclusions unsupported by factual allegations are not entitled to that

assumption of truth.  *Iqbal*, 129 S. Ct. at 1950.   A complaint states a facially

plausible claim for relief "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Id*.  This demands "more than a sheer possibility that a

defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual

allegations must be enough to raise a right to relief above the speculative level.").

The Eleventh Circuit instructs that Rule 12(b)(6) "'does not impose a probability

requirement at the pleading stage,' but instead 'simply calls for enough fact to

raise a reasonable expectation that discovery will reveal evidence of' the necessary

element[s]."  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007)

(quoting *Twombly*, 550 U.S. at 555).  Ultimately, this inquiry is a "context-specific

task that requires the reviewing court to draw on its judicial experience and

common sense."  *Iqbal*, 129 S. Ct. at 1950.

     Moreover, where, as here, the complaint alleges fraud or mistake, "a party

must state with particularity the circumstances constituting fraud or mistake."

Fed. R. Civ. P. 9(b).  However, this Rule establishing a heightened pleading

standard for fraud-based claims further provides that "[m]alice, intent, knowledge,

and other conditions of a person's mind may be alleged generally."  *Id.  See also*

*FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir.

2011).  Indeed, the Eleventh Circuit instructs that "pursuant to Rule 9(b), a

plaintiff must allege: '(1) the precise statements, documents, or misrepresentations

made; (2) the time, place, and person responsible for the statement; (3) the content

and manner in which these statements misled the [p]laintiffs; and (4) what the

defendants gained by the alleged fraud.'" *Am. Dental Ass'n v. Cigna Corp.*, 605

F.3d 1283, 1291 (11th Cir. 2010) (quoting *Brooks v. Blue Cross & Blue Shield of*

*Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)).  An application of Rule 9(b)

"must not abrogate the concept of notice pleading;" however, the "particularity

rule serves an important purpose in fraud actions by alerting defendants to the

precise misconduct with which they are charged and protecting defendants against

spurious charges of immoral and fraudulent behavior."  *Durham v. Bus. Mgmt.*

*Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988).   Accordingly, under Rule 9(b), "it

is sufficient to plead the who, what, when, where, and how of the allegedly false

statements and then allege generally that those statements were made with the

requisite intent."  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir.

2008).  Finally, the "'[f]ailure to satisfy Rule 9(b) is a ground for dismissal of a

complaint.'" *FindWhat*, 658 F.3d at 1296 (alteration in original) (quoting *Corsello*

*v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005) (per curiam)).

## III.   ANALYSIS

A.      *Fed. R. Civ. Pro. 12(b)(6) and 9(b)*.

The Jupiter Defendants first contend that the Tarragon Plaintiffs' claims for

fraud and misrepresentation are entirely implausible and therefore must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and *Iqbal*/*Twombly*.  Doc. 11, at 11-14.  The Jupiter Defendants argue that the counter and third party complaint contradicts itself because, on one hand, the Tarragon Plaintiffs allege "that the Jupiter Defendants coerced Tarragon into entering into the Madison Agreement to 'maximize profit' and 'enhance revenue to Jupiter, Taberna and/or RAIT,'" but the Tarragon Plaintiffs also assert that "the Jupiter Defendants never actually intended to perform under the potentially profit-maximizing Madison Agreement."  *Id.* at 12 (quoting doc. 4 ¶¶ 10,12, 29).  Put differently, the Jupiter Defendants maintain that it is "utterly implausible" for a company to force itself into a "lucrative" contract but never intend to perform under the contract and thereby failing to maximize profit.  *Id.*

However, the Tarragon Plaintiffs allege sufficient factual content, taken as true, to state a plausible claim for fraud or misrepresentation.  Under Alabama law, a plaintiff must allege the following for fraud or misrepresentation: "'(1) a misrepresentation of a material fact; (2) made wilfully to deceive or recklessly without knowledge; (3) which was justifiably relied upon by the plaintiff under the circumstances; and (4) which caused damages as a proximate consequence.'"  *Scott v. Scott*, 907 F. Supp. 1495, 1500 (M.D. Ala. 1995) (quoting *McGarry v. Flournoy*, 624 So. 2d 1359, 1361 (Ala. 1993)).  Read in the light most favorable to the Tarragon Plaintiffs, their complaint is not contradictory or utterly implausible.  Rather, the court finds that the Jupiter Defendants' economic power over the

Tarragon Plaintiffs, *combined* with misrepresentations regarding RAIT's commitment to the Tarragon properties and Jupiter's expertise in property management, reasonably induced Tarragon to contract with Jupiter—a plausible claim for fraud against the Jupiter Defendants. Moreover, it is reasonable to infer that the Jupiter Defendants may have directed the sub-property management contract toward Jupiter with the intention of profiting from such contract to some degree, while, at the same time, misrepresenting to the Tarragon Plaintiffs the full extent of their planned expenditures in managing the properties.[1] As such, the counter and third party complaint survives Rule 12(b)(6) scrutiny.

The Jupiter Defendants also contend that the Tarragon Plaintiffs' fraud claims are "based on generalized, blanket allegations that are wholly insufficient under the heightened standards for pleading fraud imposed by [Rule] 9(b)." Doc. 11, at 2. The court agrees with respect to Taberna because the third party complaint never provides any fraudulent statement or misrepresentation made by Taberna. *See generally* doc. 4, at 13-18. Instead, all of the "precise statements, documents, or misrepresentations," *Am. Dental Ass'n*, 605 F.3d at 1291, alleged

---

[1] The Jupiter Defendants also assert that the Madison Agreement paid Jupiter based on Tarragon's gross revenue and that all of Jupiter's operating expenses for the Tarragon properties were paid by Tarragon, not Jupiter. Doc. 17, at 7-8. As such, the Jupiter Defendants contend that sub-standard expenditures or property management by Jupiter would mean a reduction in Jupiter's management fees. *Id.* at 8. While the court recognizes the Tarragon Plaintiffs' burden in overcoming this evidence, the Tarragon Plaintiffs *still state a plausible claim* for fraud. The Jupiter Defendants plausibly induced the Madison Agreement by falsely promising or misrepresenting a higher level of overall future performance, i.e. hiring a new Jupiter chief operating officer. *See* doc. 4, at 17.

by the Tarragon Plaintiffs pertain specifically to RAIT and Jupiter.  *See* doc. 4, at

13-18.  Absent any particularized pleadings against Taberna, the court **GRANTS**

Taberna's motion to dismiss the Tarragon Plaintiffs' claims without prejudice.

However, the counter and third party complaint meets the Rule 9(b)

heightened pleading standard with respect to RAIT and Jupiter.  The Tarragon

Plaintiffs specifically allege precise misrepresentations made by RAIT and Jupiter.

Doc. 4, at 15-17.  The complaint also provides specific dates for these

misrepresentations and identifies which entity—RAIT or Jupiter—made the

misrepresentations.  *Id.  See Am. Dental Ass'n*, 605 F.3d at 1291.  Moreover, the

complaint provides "the content and manner in which these statements mislead the

Plaintiffs."  *See id.*  The Tarragon Plaintiffs' theory of fraud is that RAIT's

economic power over Tarragon, combined with Jupiter and RAIT's

misrepresentations, induced the Madison Agreement between Tarragon and

Jupiter.  Purportedly, RAIT and Jupiter misrepresented the properties Jupiter

currently managed, that Jupiter intended to hire a new chief operating officer, that

Jupiter planned to move its office to Dallas, and that RAIT would ensure Jupiter's

performance of the Agreement.  Doc. 4, at 15-18.  *See also* Fed. R. Civ. P. 9(b)

("Malice, intent, knowledge, and other conditions of a person's mind may be

alleged generally.").  Additionally, the Tarragon Plaintiffs allege with particularity

that Jupiter and RAIT's failure to fully perform these promises regarding property

management services led to damages to the Huntsville property.  Doc. 4, at 18.

Therefore, while the Tarragon Plaintiffs may not have pled the precise location of

these misrepresentations, *see* doc. 11, at 14, "[t]here is no confusion over what allegedly happened, when the events took place, . . . or what [Jupiter and RAIT] gained by the transaction." *Am. Nat'l Red Cross v. ASD Specialty Health Care, Inc.*, 325 F. Supp. 2d 1322, 1327 (S.D. Ala. 2002).  Ultimately, "'the purpose behind requiring such particularity is to provide a defendant fair notice of the substance of a plaintiff's claim so that the defendant can formulate a defense.'" *Bartronics, Inc. v. Power-One, Inc.*, 245 F.R.D. 532, 537 (S.D. Ala. 2007) (quoting *MedImmune, Inc. v. Centocor, Inc.*, 271 F. Supp. 2d 762, 772 (D. Md. 2003)).  The Tarragon Plaintiffs sufficiently pled with particularity their claims against Jupiter and RAIT such that Jupiter and RAIT can adequately formulate a defense, and as such, the court **DENIES** Jupiter and RAIT's motion to dismiss under Rule 12(b)(6) and Rule 9(b).

B.     *Personal Jurisdiction*

RAIT also contends that this court lacks personal jurisdiction.[2]  "A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant to the same extent as a court of that state." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355 (11th Cir. 2000).  "Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution." *Id.* at 1355-56 (citing *Martin v. Robbins*, 628 So.2d 614, 617 (Ala. 1993)); *see also* Ala.

---

[2] In light of the court's decision to dismiss the claims against Taberna, *see supra*, the court will only address personal jurisdiction as it relates to RAIT.

R. Civ. P. 4.2(b).  The Fourteenth Amendment's due process clause generally "permits a court to summon a non-resident to defend himself in the forum so long as that person has some 'minimum contacts' with that state, and the exercise of personal jurisdiction over the defendant would not offend 'traditional notions of fair play and substantial justice.'" *Ruiz de Molina*, 207 F.3d at 1356 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 392 (11th Cir. 1988)).

Here, the Tarragon Plaintiffs argue that this court has "specific" personal jurisdiction over RAIT.  Doc. 14, at 10.  As it relates to constitutionally "minimum contacts" for specific personal jurisdiction, "the defendant's contacts with the applicable forum must satisfy three criteria." *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993).  "First, the contacts must be related to the plaintiff's cause of action or have given rise to it." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).  "Second, the contacts must involve 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (alteration in original)).  "Third, the defendant's contacts with the forum must be 'such that [the defendant] should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (alteration in original)).

RAIT contends that the Tarragon Plaintiffs fail to show that it "purposefully

availed itself of the privilege of conducting activities within Alabama." Doc. 11, at 17. The court disagrees because "the court is required to accept as true the allegations of plaintiff's complaint, and deny the motion [to dismiss] if these allegations state a prima facie case of [personal] jurisdiction." *Ruiz de Molina*, 207 F.3d at 1356. In relation to their fraud claims, the Tarragon Plaintiffs allege the following contacts with Alabama: "RAIT commenced negotiations with Tarragon in an effort to have Tarragon contract with Jupiter to provide property management services for its commercial real estate," doc. 4, at 15; "RAIT forced Tarragon to contract with Jupiter to manage the bundle of properties in Huntsville, Tennessee and Texas," *id.* at 14-15; "RAIT directed that Jupiter make the least possible expenditures in managing the properties," *id.* at 17; and "Jupiter and RAIT, contrary to prior representations, attempted to operate properties by long distance. They concealed this fact from Tarragon, until they were forced to confess they were not visiting the properties," *id.* Taking these allegations as true, RAIT "should certainly have anticipated being haled into an Alabama court should a claim arise out of [its] conduct." *Ruiz de Molina*, 207 F.3d at 1358. RAIT purportedly directed Tarragon to hire Jupiter to manage Alabama properties, controlled how Jupiter managed this real estate, and even supposedly operated Tarragon Huntsville's properties in Alabama. These alleged facts are sufficient to establish that RAIT "purposefully availed [itself] of the opportunity to do business *with* an Alabama resident [Tarragon Huntsville] *in* Alabama." *Id.* at 1357.

Additionally, the Eleventh Circuit in *Ruiz de Molina* instructs that courts

performing a specific personal jurisdiction analysis should consider the type of claim alleged. *See id.* at 1358. In *Ruiz de Molina*, the plaintiffs alleged fraud and fraudulent deceit, as opposed to mere negligence. As such, the defendants were "'not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortuous, actions were expressly aimed at [the forum].'" *Id.* (quoting *Calder v. Jones*, 465 U.S. 783, 788 (1984) (alteration in original)). Similarly here, the Tarragon Plaintiffs allege more than mere unintentional negligence against RAIT. Instead, the Tarragon Plaintiffs claim that RAIT purposefully and intentionally committed fraud to obtain property management contracts in Alabama. *See* doc. 14, at 10.[3] Therefore, based on the aforementioned reasons, the court **DENIES** RAIT's motion to dismiss for lack of personal jurisdiction. The Tarragon Plaintiffs may continue to pursue their claims against Jupiter and RAIT.

**DONE** the 6th day of February, 2012.

ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE

---

[3] "Once it is decided that defendants have at least minimum contacts with a forum," a personal jurisdiction analysis also requires a "fairness" inquiry. *See Ruiz de Molina*, 207 F.3d at 1358. The burden of this inquiry rests with the defendant "to show that the imposition of jurisdiction in the forum is unreasonable." *Id.* Here, RAIT fails to address the "fairness" prong, *see* doc. 11, at 17 n.6; accordingly, the court finds that exercising personal jurisdiction over RAIT is indeed reasonable.